UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ANIL MATHEWS,
RAHUL AGARWAL, and
KENNETH HARLAN,

          Defendants.

**SEALED INDICTMENT**

S1 24 Cr. 630

---

## COUNT ONE
### (Conspiracy to Commit Securities Fraud, to Make False Filings with the Securities and Exchange Commission, to Improperly Influence the Conduct of Audits, and to Falsify Books and Records)

The Grand Jury charges:

### Overview

1.     From at least in or about 2021 through at least in or about December 2023, ANIL

MATHEWS, RAHUL AGARWAL, and KENNETH HARLAN, the defendants, orchestrated a

scheme to enrich themselves by fraudulently inflating the reported revenue of Near Intelligence,

Inc. ("Near"), a publicly traded data intelligence company at which MATHEWS and AGARWAL

were employed as senior executives, by "round-tripping" money through MobileFuse, LLC a

private mobile advertising company founded and run by HARLAN. The round-tripping scheme

began before Near became a public reporting company, and MATHEWS and AGARWAL's

fraudulent inflation of Near's revenue was designed, at least in part, to make Near look more

attractive for acquisition by a Special Purpose Acquisition Company, or SPAC, to take Near

public. HARLAN, along with other senior MobileFuse executives, agreed to facilitate Near's

fraudulent inflation of its revenue by exchanging fake invoices along with inflated payments that

allowed Near's revenue from MobileFuse's business to appear more than ten times higher than it actually was, while MobileFuse "netted" out the roundtripped amounts and paid Near only what MobileFuse owed it for services actually rendered. The defendants, and other senior executives at Near and MobileFuse, knew that Near was recognizing fake revenue that was based on these round-tripped amounts that originated at Near, rather than representing money MobileFuse legitimately owed Near for business services.

2.    The fraudulent accounting practices instigated by the defendants and their co-conspirators caused Near to overstate its revenue by at least approximately $25 million. At various times, Near's revenue was falsely inflated by as much as approximately 28 percent, with the greatest inflations to Near's revenue in 2022, just before it went public. These inflated figures were relied on by the SPAC when it evaluated whether to acquire Near. Near's misrepresentations about its revenue, as orchestrated by the defendants and their co-conspirators, continued after it became a public reporting company. Revenue inflated by MobileFuse's round-tripped payments gave the appearance that Near was meeting its revenue projections, when, actually, Near would have failed to meet those projections without the round-trip payments. In order to conceal Near's fraudulent accounting practices, the defendants, and other senior executives at Near and MobileFuse, took steps to mislead the independent certified public accountants engaged to audit Near's financial statements.

3.    The round-tripping scheme unraveled a few months after Near began trading on the Nasdaq on or about March 24, 2023. On or about October 5, 2023, Near announced an initial assessment that revenue may have been overstated and that its financial statements should not be relied on. Near filed for bankruptcy in December 2023, less than nine months after its merger with the SPAC was completed.

2

4.     ANIL MATHEWS and RAHUL AGARWAL, the defendants, further enriched themselves at Near's expense by embezzling money from the company. From in or about May 2022, through in or about 2024, MATHEWS engaged in a scheme to embezzle hundreds of thousands of dollars from Near to pay rent for a luxury home located in Laguna Beach, California. MATHEWS took concerted efforts to conceal the embezzlement scheme from Near, its auditors, and its shareholders, including through the creation and use of fictitious invoices. Similarly, from in or about 2021 to in or about 2022, AGARWAL also embezzled from Near by transferring funds equivalent to more than a million dollars to a Singaporean company owned by him, along with hundreds of thousands of dollars to a company owned by another Near executive ("Near Executive-3"). Agarwal later facilitated a cover-up by causing Near's finance department to transmit to Near's independent auditors a fraudulent MobileFuse invoice to account for the transfers.

<u>*Relevant Individuals and Entities*</u>

5.     Near Intelligence, Inc. and its predecessors, subsidiaries, and affiliates, including Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd. (collectively, "Near") operated as a global data intelligence company. Near was founded in 2012 by ANIL MATHEWS, the defendant, and maintained a headquarters in Pasadena, California. Near compiled consumer movement data and other consumer intelligence and provided such data through digital software products to its customers, including restaurant, tourism, automotive, and retail industries, for their own use in making business decisions. In or about 2016, Near launched its flagship "software-as-a-service" product, Allspark, which allowed Near's customers to compile and curate consumer data for use in advertising campaigns and then gauge changes in consumer behavior to evaluate the success of those campaigns. Near went public by means of a so-called "reverse

merger" with KludeIn I Acquisition Corp. ("KludeIn"), a SPAC, and began trading on the Nasdaq on or about March 24, 2023. In December 2023, Near filed a bankruptcy petition under Chapter 11 of the U.S. Bankruptcy Code. As of on or about March 1, 2024, in connection with the bankruptcy proceedings, Near transferred its operations and assets to another entity, which continues to operate much of Near's legacy business.

6.      From in or about 2012 through in or about November 2023, ANIL MATHEWS, the defendant, was the Chief Executive Officer ("CEO") and one of the founders of Near. From in or about 2016 through in or about November 2023, RAHUL AGARWAL, the defendant, was the Chief Financial Officer of Near. From in or about 2019 through in or about January 2022, Near Executive-3 was the Chief Revenue Officer of Near. MATHEWS, AGARWAL, and Near Executive-3 each obtained an ownership interest in MobileFuse in or about 2021. Those interests were undisclosed to Near's auditors and omitted from Near's public filings.

7.      At all times relevant to this Indictment, MobileFuse, LLC was a privately held mobile advertising company that facilitated customer advertisements on mobile applications and was based in New York, New York. MobileFuse was founded in 2009 by KENNETH HARLAN, the defendant, who served as MobileFuse's CEO at all relevant times, and by another co-founder ("MobileFuse Executive-2"). HARLAN and MobileFuse Executive-2 together owned more than 80 percent of MobileFuse. At all times relevant to this Indictment, another MobileFuse employee ("MobileFuse Executive-3") served as the Director of Finance.

## Public Company Reporting Requirements

8.      From the time it became a public company on or about March 24, 2023, Near was required to comply with the federal securities laws designed to ensure that a publicly traded company's financial information is accurately recorded and disclosed to the investing public.

4

Specifically, pursuant to the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, Near was required to: (a) file with the United States Securities and Exchange Commission (the "SEC") annual financial statements (on SEC Form 10-K); (b) file with the SEC quarterly financial reports (on SEC Form 10-Q); and (c) make and keep books, records, and accounts that accurately and fairly reflected Near's business transactions. Federal securities law further required that Near's annual financial statements be audited by independent certified public accountants.

9.     On or about May 19, 2023, and August 14, 2023, Near filed quarterly financial reports that were signed by both of ANIL MATHEWS and RAHUL AGARWAL, the defendants. Near filed with these quarterly financial reports certifications entitled "Certification of Periodic Report Under Section 302 of the Sarbanes-Oxley Act of 2002" in which MATHEWS and AGARWAL each certified, in relevant part:

> 1. I have reviewed this Quarterly Report on Form 10-Q of Near Intelligence, Inc.;
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report; . . . .

In these certifications, MATHEWS and AGARWAL also each certified they had disclosed to Near's auditor and the audit committee of Near's board of directors, or persons performing the equivalent functions: "Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

5

10.     In conjunction with each of its quarterly financial reports, Near included a second set of certifications titled "Certification Pursuant to 18 U.S.C. Section 1350 As Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002," in which ANIL MATHEWS and RAHUL AGARWAL, the defendants, further certified, in relevant part, that the quarterly financial report

> fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; . . . [T]he information contained in this [quarterly or annual] report fairly presents, in all material respects, the financial condition and results of operations of the Company as of, and for, the periods presented in the Form 10-Q.

11.     Before Near was itself a public company, in advance of the completion of the reverse merger with KludeIn, KludeIn filed a Form S-4 Registration Statement and amendments incorporating Near's financial statements, pursuant to the Securities Act of 1933, which requires registration statements to be free of material misstatements and omissions. The Form S-4 filed on or about June 30, 2022, stated that "[a]ll information contained in this proxy statement/prospectus relating to . . . Near has been supplied by Near." As to representations regarding Near's revenue, the Form S-4 stated: "[Near] generated $45 million in revenue in 2021, reflecting an increase of 350% from our revenue in 2020, which was $12.80 million. In the first quarter of 2022, [Near] generated $14 million in revenue, reflecting a growth rate of 295% over the same period in 2021."

*Near's Disclosure and Promotion of Revenue Guidance and Results to the Investing Public*

12.     In press releases accompanying Near's quarterly filings, Near provided guidance on its expected revenue and revenue growth for the year. During each period, Near touted its quarter over quarter revenue and its revenue growth.

13.     On March 28, 2023, Near filed on Form 8-K with the SEC, signed by RAHUL AGARWAL, the defendant, a press release announcing the fourth quarter and full year 2022

financial results. The press release's headline was "Full year revenue of $59.7 million, up 42% year-over-year."

14.     Near published guidance for Q1 2023 of total revenue in the range of $15 million to $15.5 million. On or about May 15, 2023, Near filed on Form 8-K with the SEC, signed by RAHUL AGARWAL, the defendant, a press release announcing the first quarter of 2023 financial results. The press release's headline was "Q1 2023 revenue of $15.5 million, up 10% year-over-year and slightly above the guidance range."

15.     Near published guidance for Q2 2023 of total revenue in the range of $17.5 million to $18 million. On August 14, 2023, Near filed on form 8-K with the SEC, signed by RAHUL AGARWAL, the defendant, a press release announcing the second quarter of 2023 financial results. The press release's headline was "Q2 2023 revenue of $17.7 million, up 19% year-over-year and within the guidance range."

16.     During an earnings call on or about August 17, 2023 to discuss the Q2 2023 numbers, both ANIL MATHEWS and RAHUL AGARWAL, the defendants, emphasized that Near's quarterly revenue of $17.7 million was at "the midpoint of our guidance range."

### The Round-Tripping Scheme

17.     Between approximately May 2021 and September 2023, Near fraudulently inflated its revenue by approximately $25 million by secretly funneling money to MobileFuse, which MobileFuse then returned to Near coupled with small amounts MobileFuse actually owed Near for the use of its services, including the Allspark Platform. Near then booked the entire payment from MobileFuse as revenue, even though the payments were approximately 10 times what MobileFuse legitimately owed and mostly comprised funds that had originated at Near.

7

18.    The Near-MobileFuse relationship began in or around late 2019, when executives of both companies met in New York, New York. Principals of the respective companies, including ANIL MATHEWS and KENNETH HARLAN, the defendants, discussed a potential acquisition of MobileFuse by Near. Acquisition discussions continued, off and on, during all times relevant to this Indictment.

19.    In or about January 2021, before the round-tripped payments began, ANIL MATHEWS and RAHUL AGARWAL, the defendants, along with Near Executive-3, invested $2 million in MobileFuse through a Singapore private limited company, Uniqequity PTE LTD, in exchange for approximately 1.2 million Class B MobileFuse shares, which amounted to an approximately 10% equity stake in MobileFuse. In the summer of 2023, shortly after Near became a public company, MobileFuse repurchased these Class B MobileFuse shares from MATHEWS, AGARWAL, and Near Executive-3 for just $12,019.14. Effectively, therefore, the January 2021 "investment" amounted to a nearly $2 million payment from the Near executives to MobileFuse, and specifically, to KENNETH HARLAN, the defendant, and MobileFuse Executive-2, the majority owners of MobileFuse.

20.    A few months later, in or about May 2021, ANIL MATHEWS, RAHUL AGARWAL, and KENNETH HARLAN, the defendants, exchanged emails to discuss how the round-tripped transactions would work. As part of these exchanges, AGARWAL sent HARLAN an invoice dated April 30, 2021 for $1.25 million to be paid from MobileFuse to Near, even though the defendants knew that Near had not provided $1.25 million in goods or services to MobileFuse during April 2021. Using the $1.25 million invoice as a starting point, HARLAN sent AGARWAL a series of calculations for how the "counter invoice"—representing the amount MobileFuse would legitimately owe Near for services rendered on a monthly basis, plus the round-tripped amount

that originated from Near—might be calculated. HARLAN's proposal included an "alternative idea" for the calculation that "allows your revenue to be higher." AGARWAL replied that he was "aligned" on the calculations and agreed "that the last alternative you have recommended [the one that 'allows revenue to be higher'] makes the most sense."

21.    On or about May 26, 2021, KENNETH HARLAN, the defendant, sent RAHUL AGARWAL, the defendant, an email attaching (i) Near's April 30, 2021 invoice for $1.25 million, (ii) MobileFuse's "counter invoice" of the same date for $1,185,569 reflecting the method of calculation described in the prior emails, and (iii) MobileFuse's wire instructions. In the email, HARLAN further requested, "If possible, could Near pay [MobileFuse] first and we process for a one day lag." HARLAN also connected AGARWAL with MobileFuse Executive-3 to coordinate the timing and processing of the payments. MobileFuse's April 30, 2021 "counter invoice" of $1,185,569, once netted against the initial $1.25 invoice from Near, reflects an actual payment due to Near from MobileFuse of only $64,431.

22.    The same day, MobileFuse Executive-3 sent MobileFuse Executive-2 a series of text messages seeking MobileFuse Executive-2's approval for "a huge payment to NEAR for 1.25M." MobileFuse Executive-3 explained to MobileFuse Executive-2: "they will wire us first . . . [and] we turn around and then pay them." The next day, MobileFuse Executive-3 texted MobileFuse Executive-2: "We're all set with Near. We received the 1.185M. I set up a wire for 1.250M in return." MobileFuse Executive-2 asked what the Near invoice was for, and MobileFuse Executive-3 suggested MobileFuse Executive-2 talk to KENNETH HARLAN, the defendant. By email, MobileFuse Executive-2 wrote to HARLAN and MobileFuse Executive-3 requesting "some color on the big Near wire." HARLAN replied, "Basically, they are grossing up their revenue. The

net though is less than what [another account] cost[s] us. And they pay us first so no risk in funds."

MobileFuse Executive-2 approved this and subsequent wires from MobileFuse to Near.

23.     From in or about May 2021 to in or about September 2023, Near and MobileFuse

engaged in a series of similar transactions in which Near paid MobileFuse followed by reverse

payments to Near on or about the same day in close but slightly greater amounts, the difference

representing the amount MobileFuse legitimately owed to Near for actual services rendered. The

payments totaled approximately more than $25 million to MobileFuse, and approximately

$27,750,000 to Near, as reflected in the below chart:

| Date | Near Payment to MobileFuse | MobileFuse Payment to Near |
|---|---|---|
| 5/27/2021 | $1,185,569 | |
| 5/28/2021 | | $1,250,000 |
| 6/30/2021 | $1,155,880 | |
| 6/30/2021 | | $1,250,000 |
| 7/26/2021 | $1,167,917 | |
| 7/27/2021 | | $1,250,000 |
| 10/20/2021 | $2,765,694 | |
| 10/22/2021 | | $3,000,000 |
| 1/26/2022 | $1,408,046 | |
| 1/27/2022 | | $1,500,000 |
| 9/28/2022 | | $1,500,000 |
| 9/28/2022 | | $1,500,000 |
| 9/29/2022 | $1,595,040 | |
| 9/29/2022 | $1,250,000 | |

| Date | Near Payment to MobileFuse | MobileFuse Payment to Near |
|---|---|---|
| 2/6/2023 | $4,295,024 | |
| 2/7/2023 | | $4,500,000 |
| 2/28/2023 | $1,404,533 | |
| 2/28/2023 | | $1,500,000 |
| 5/11/2023 | $1,250,000 | |
| 5/11/2023 | $119,349 | |
| 5/11/2023 | | $1,500,000 |
| 6/15/2023 | $1,250,000 | |
| 6/15/2023 | $140,481 | |
| 6/15/2023 | | 1,500,000 |
| 6/28/2023 | $2,500,000 | |
| 6/28/2023 | $236,195 | |
| 6/28/2023 | | $3,000,000 |
| 9/13/2023 | $2,500,000 | |
| 9/13/2023 | $250,574 | |
| 9/13/2023 | | $3,000,000 |
| 9/28/2023 | $1,195,508 | |
| 9/29/2023 | | $1,500,000 |

24.     Near booked payments received from MobileFuse as revenue, even though ANIL MATHEWS, RAHUL AGARWAL, and KENNETH HARLAN, the defendants, knew that the payments Near received from MobileFuse lacked economic substance and merely reflected a return of money Near had previously paid MobileFuse the same day or the day before. As

MATHEWS, AGARWAL, and HARLAN knew, Near's recognition of the fraudulently inflated revenue from the MobileFuse round-tripped transactions caused Near's revenue to be overstated on its financial statements, including its audited financial statements from both before and after Near became a public company.

25.    ANIL MATHEWS and RAHUL AGARWAL, the defendants, approved Near's financial statements notwithstanding the overstated revenue figures. MATHEWS and AGARWAL also signed the Sarbanes-Oxley certifications described in paragraphs 9 and 10 of this Indictment, even though they knew their certifications were false.  The round-trip payments from MobileFuse contributed to Near meeting its revenue guidance in the first two quarters of 2023, as MATHEWS and AGARWAL knew.

26.    Near, at the direction of ANIL MATHEWS and RAHUL AGARWAL, the defendants, disguised Near's return payments to MobileFuse through various methods designed to conceal the existence of the roundtripping scheme. These methods included sham contracts, bogus vendor invoices, and the transfer of funds through a Singapore-based foreign exchange service. Each method was designed to present Near's outgoing payments to MobileFuse as legitimate payables, including by associating the outgoing payments in Near's books and records with fictitious invoices from other entities.

27.    Though KENNETH HARLAN, the defendant, knew and understood that MobileFuse's exchange of invoices with Near enabled Near to record increased revenue on its books, HARLAN understood the increased revenue was fraudulent and he acted accordingly. MobileFuse, for example, did not book the money it received from Near as part of the round-tripped transactions as revenue within its own financial statements. Rather, MobileFuse "netted" the amount Near paid it against the amount it paid Near and recorded only the difference. The

result was that Near and MobileFuse accounted for the revenue from their mutual transfers differently. HARLAN recognized that Near's approach was highly misleading: on or about March 28, 2023, HARLAN texted MobileFuse Executive-2 to compare MobileFuse's finances to Near's: "Interesting note....we have more revenue than Near and obviously profitable both in 2022 and forecasted for 2023 and our revenue is real."

28.      Furthermore, MobileFuse, as directed by KENNETH HARLAN, the defendant, took additional steps to conceal the true nature of its relationship with Near. For example, on or about April 1, 2023, Near's billing department inadvertently sent one of the fictitious invoices, which billed MobileFuse $1.5 million for "platform usage fee," to a MobileFuse employee who was not knowledgeable about the illicit scheme. The email eventually made its way to KENNETH HARLAN, the defendant, who immediately emailed ANIL MATHEWS and RAHUL AGARWAL, the defendants: "Guys, I'm really annoyed by this email for so many reasons. . . . Why would this be sent to anyone but [MobileFuse Executive-3] or myself? . . . Now I have to explain to a random employee on why we are spending so much with Near." HARLAN then sent a text message to MATHEWS: "Hi Anil, please take a look at an email I just sent. We are heading towards a termination. Your team is so clueless and it is now impacting my team. Sorry about the email and text but this is really the last straw. Thanks." MATHEWS responded: "I agree this shouldn't have come in the first place, and am fixing that. [AGARWAL] will deal direct with [MobileFuse Executive-3] as always."

29.      KENNETH HARLAN, the defendant, also assisted ANIL MATHEWS and RAHUL AGARWAL, the defendants, in concealing the lack of economic substance in the Near-MobileFuse round-tripped transactions from Near's independent auditor (the "Audit Firm"), which audited Near's financial statements for fiscal years 2021 and 2022, as well as the quarterly reviews

for the first and second quarters of 2023. In connection with those audits and quarterly reviews,

MATHEWS and AGARWAL signed management representation letters representing, among

other things:

> 1. "There are no material transactions that have not been properly recorded in the accounting records underlying the interim financial information."
>
> 2. "We have no knowledge of any fraud or suspected fraud affecting [Near] involving . . . [o]thers where the fraud could have a material effect on the interim financial information."
>
> 3. "Related-party relationships and transactions, including sales, purchases, loans, transfers, leasing arrangements, and guarantees, and amounts receivable from or payable to related parties . . . have been properly accounted for and adequately disclosed . . . ."
>
> 4. "There are no . . . [s]ide agreements, implicit provisions, unstated customary business practices, or other arrangements (either written or oral) that affected the amount or timing of revenue reported in the interim financial information . . . ."

In addition to those false representations, MATHEWS and AGARWAL did not disclose to the

Audit Firm their ownership interest in MobileFuse.

30.     As part of the Audit Firm's audits of Near's 2021 and 2022 financial statements,

the Audit Firm tested Near's accounts receivable by, among other things, sending audit

confirmations to MobileFuse to confirm that MobileFuse owed the amounts on invoices issued by

Near. KENNETH HARLAN, the defendant, signed and caused MobileFuse to sign the audit

confirmations even though he knew that the Near invoices were fictious, and were part of the

fraudulent round-tripping scheme.

31.     On or about April 15, 2022, RAHUL AGARWAL, the defendant, sent ANIL

MATHEWS, the defendant, an email to advise him that the Audit Firm intended to send an audit

confirmation request directly to MobileFuse. AGARWAL told MATHEWS: "We need Ken

14

[HARLAN] to sign off on this positively. Will be great if you can let him know." On or about April 18, 2022, MATHEWS emailed KENNETH HARLAN, the defendant, the audit confirmation and stated, in part, "Could you please take care of this one." HARLAN forwarded the confirmation to MobileFuse Executive-3, who signed it.

32.     On or about February 1, 2023, the Audit Firm sent KENNETH HARLAN, the defendant, two audit confirmations each listing Near invoices that were part of the round-trip scheme and asking HARLAN to confirm that MobileFuse in fact owed the amount on those invoices and that there were no special sale or payment terms to report. RAHUL AGARWAL, the defendant, sent an email message to HARLAN, copying ANIL MATHEWS, the defendant, and MobileFuse Executive-3, to ensure HARLAN would sign the confirmations. AGARWAL wrote: "Please confirm once the audit confirmation has been signed and shared. We are required to complete by Friday to ensure there is no default as we are going public and as such will appreciate if this is done at the earliest." HARLAN initially suggested to AGARWAL and MATHEWS that he would not sign these false audit confirmations unless AGARWAL first resolved two things: a reconciliation of the amounts owed between the companies for 2022 and the shareholder agreement formalizing the repurchase of MobileFuse's Class B shares owned by the Near executives, as described previously in paragraph 19 of this Indictment. After AGARWAL and MATHEWS provided HARLAN reassurances that both items were in process, HARLAN signed the false audit confirmation.

## The Mathews Embezzlement Scheme

33.     From in or about May 2022, through in or about 2024, ANIL MATHEWS, the defendant, engaged in a scheme to embezzle hundreds of thousands of dollars from Near to pay rent for a luxury home located in Laguna Beach, California. MATHEWS further took concerted

efforts to conceal the embezzlement scheme from Near, its auditors, and its shareholders, including through the creation and use of four fictitious invoices (the "Laguna Invoices") totaling approximately $474,000. Each of the Laguna Invoices sought payment from near for purported "professional services" and included the name and address of a Colorado-based married couple (the "Payees"). On four separate occasions, MATHEWS transmitted the Laguana Invoices by email to employees at Near directing the Near employees to transmit payment to the Payees. Pursuant to the Laguna Invoices, Near sent four payments to the Payees, three of which were transmitted through a bank located in New York, New York:

      a.    $162,000 on or about June 14, 2022;
      b.    $132,000 on or about January 3, 2023;
      c.    $60,000 on or about July 11, 2023; and
      d.    $120,000 on or about September 11, 2023.

34.    In actuality, the Payees did not provide "professional services" to Near, did not prepare or authorize the Laguna Invoices, and had never seen the Laguna Invoices. Rather, the Payees owned a luxury home with five bedrooms, four bathrooms, and ocean views, which they rented to ANIL MATHEWS, the defendant. The amounts listed in the Laguna Invoices reflected rent payments MATHEWS owed the Payees, and the wire transfers from Near to the Payees went to cover MATHEWS' rent.

**The Agarwal and Near Executive-3 Embezzlement Scheme**

35.    RAHUL AGARWAL, the defendant, also embezzled from Near. On or about March 26, 2021, AGARWAL transferred $6 million from the Singaporean branch of one of Near's bank accounts to Near's account at a Singapore-based Foreign Exchange service ("Exchange-1"). AGARWAL approved the activity in the Exchange-1 operations account. In three payments (one of which predated the $6 million transfer), AGARWAL transferred approximately $1,315,000 to a Singaporean company owned by him. He also transferred approximately $312,000 to a company

16

owned by Near Executive-3, on or about April 26, 2021. AGARWAL later facilitated a cover-up by causing Near's finance department to transmit to Near's independent auditors a fraudulent MobileFuse invoice to account for the $6 million transfer, which was reflected on Near's books as a "data" cost, but which, in actuality, facilitated in part AGARWAL's scheme pay himself and Near Executive-3 using Near funds.

36.     On or about March 8, 2022, after questions were first raised concerning a lack of documentation supporting the March 26, 2021 $6 million transfer for "data," RAHUL AGARWAL, the defendant, emailed KENNETH HARLAN, the defendant, copying ANIL MATHEWS, the defendant, a Data License Agreement backdated to June 30, 2020. In the body of the message, Agarwal wrote: "Hi Ken, As discussed during our meeting and the subsequent call, please find attached the MFX agreement for your signature. We missed getting this signed earlier and need to get the MSA executed ASAP."

37.     In or about April 2022, the Audit Firm, which was based in New York, New York, asked for further documentation supporting the $12 million "data" cost. A member of Near's finance department gathered documentation, sending it first to RAHUL AGARWAL, the defendant, for his approval. After receiving AGARWAL's go-ahead, the finance department employee emailed the documentation to the New York Audit Firm, copying AGARWAL. This documentation included the backdated Data License Agreement described in the previous paragraph, as well as what purported to be a $12 million invoice from MobileFuse dated July 2020 for a "one time data and reserch [sic] cost." That $12 million invoice dated July 2020 was not created by MobileFuse and predated the Near-MobileFuse business relationship.

17

**Statutory Allegations**

38.    From at least in or about 2021 through at least in or about December 2023, in the Southern District of New York and elsewhere, ANIL MATHEWS, RAHUL AGWARWAL, and KENNETH HARLAN, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.l0b-5; (b) making false and misleading statements of material fact in a registration statement required to be filed with the United States Securities and Exchange Commission under the Securities Act of 1933 and the rules and regulations promulgated thereunder, in violation of Title 15, United States Code, Section 77x; (c) making false and misleading statements of material fact in applications, reports and documents required to be filed with the United States Securities and Exchange Commission under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13; (d) improperly influencing the conduct of audits, in violation of Title 15, United States Code, Sections 7202, 7242, and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-2; and (e) falsifying corporate books and records, in violation of Title 15, United States Code, Sections 78m(b)(2), 78m(b)(5), and Title 17, Code of Federal Regulations, Section 240.13b2-1.

39.    It was a part and an object of the conspiracy that ANIL MATHEWS, RAHUL AGWARWAL, and KENNETH HARLAN, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and

did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.l0b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

40.    It was further a part and an object of the conspiracy that ANIL MATHEWS, RAHUL AGWARWAL, and KENNETH HARLAN, the defendants, and others known and unknown, willfully would and did make, in a registration statement filed under subchapter I of Title 15 of the United States Code, an untrue statement of a material fact and omit to state a material fact required to be stated therein and necessary to make the statements therein not misleading, in violation of Title 15, United States Code, Section 77x.

41.    It was further a part and an object of the conspiracy that ANIL MATHEWS, RAHUL AGWARWAL, and KENNETH HARLAN, the defendants, and others known and unknown, willfully and knowingly would and did make and cause to be made a statement in reports and documents required to be filed with the United States Securities and Exchange Commission under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, which statement was false and misleading with respect to a material fact, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13.

19

42.    It was further a part and an object of the conspiracy that ANIL MATHEWS, RAHUL AGWARWAL, and KENNETH HARLAN, the defendants, and others known and unknown, willfully and knowingly, as an officer and director of an issuer, and another person acting under the direction thereof, would and did take an action to fraudulently influence, coerce, manipulate, and mislead an independent public and certified accountant engaged in the performance of an audit of the financial statements of an issuer for the purpose of rendering such financial statements materially misleading, by, (1) as an officer and director of an issuer, directly and indirectly, (a) making, and causing to be made, a materially false and misleading statement to an accountant, and (b) omitting to state, and causing another person to omit to state, a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant; with such false statement and omission being in connection with an audit, review and examination of required financial statements of the company and the preparation and filing of documents and reports required to be filed with the United States Securities and Exchange Commission, and (2) as an officer and director of an issuer, and another person acting under the direction thereof, directly and indirectly taking an action to coerce, manipulate, mislead, and fraudulently influence an independent public and certified public accountant engaged in the performance of an audit and review of the financial statements of that issuer that are required to be filed with the Commission where such person knew and should have known that such action, if successful, could result in rendering the issuer's financial statements materially misleading, in violation of Title 15, United States Code, Sections 7202, 7242, and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-2.

43.    It was further a part and an object of the conspiracy that ANIL MATHEWS, RAHUL AGARWAL, and KENNETH HARLAN, the defendants, and others known and

unknown, willfully and knowingly falsified a book, record, and account, which were required, in reasonable detail, to accurately and fairly reflect the transactions and dispositions of the assets of an issuer of a class of securities registered pursuant to Title 15, United States Code, Section 78l, in violation of Title 15, United States Code, Sections 78m(b)(2), 78m(b)(5), and 78ff, Title 17, Code of Federal Regulations, Section 240.13b2-1.

Overt Acts

44.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about January 2021, ANIL MATHEWS and RAHUL AGARWAL, the defendants, in combination with other executives of Near, acquired a 10% ownership interest in MobileFuse, located in New York, New York, through a Singapore private limited company, Uniqequity PTE LTD, for approximately $2,000,000.

b.    On or about May 20, 2021, KENNETH HARLAN, the defendant, sent AGARWAL a series of proposed calculations for how a fake "counter invoice"—representing the amount MobileFuse would actually owe Near for services rendered on a monthly basis, plus the round-tripped amount that originated from Near—might be calculated, including an "alternative idea" for the calculation that "allows [Near's] revenue to be higher."

c.    On or about May 26, 2021, in messages between MobileFuse executives concerning the nature of a large $1.25 million payment to Near and whether it should be internally approved, HARLAN explained that the payment would help Near "gross[] up their revenue."

d.    On or about May 27, 2021, MATHEWS sent an email to a member of Near's finance department directing the employee to pay MobileFuse $1,185,569.00, as an initial payment in a scheme to inflate Near's revenue through "roundtripping" transactions.

21

e.    On or about June 30, 2022, MATHEWS caused KludeIn I Acquisition Corp. to issue a registration statement on SEC Form S-4 that contained materially false information about Near's financial performance.

f.    On or about May 10, 2022, MATHEWS and AGARWAL signed a management representation letter to the Audit Firm.

g.    On or about February 22, 2023, HARLAN signed an audit confirmation for Near's Audit Firm falsely confirming that MobileFuse in fact owed the amounts listed on Near's invoices and that there were no special sale or payment terms to report.

h.    On or about May 18, 2023, MATHEWS and AGARWAL signed a management representation letter to the Audit Firm.

i.    On or about March 28, 2023, Near filed Form 8-K, signed by AGARWAL, for a press release announcing its financial results for the year ended December 31, 2022, which contained statements of MATHEWS concerning those results and Near's revenue.

j.    On or about May 15, 2023, Near filed Form 8-K, signed by AGARWAL, for a press release announcing its financial results for the first quarter of 2023, which contained statements of MATHEWS concerning those results and Near's revenue.

k.    On or about May 18, 2023, MATHEWS and AGARWAL signed Near's Form 10-Q for the first quarter of 2023.

l.    On or about August 14, 2023, MATHEWS and AGARWAL signed Near's Form 10-Q for the second quarter of 2023.

m.    On or about August 14, 2023, Near filed Form 8-K, signed by AGARWAL, for a press release announcing its financial results for the second quarter of 2023, which contained statements of MATHEWS concerning those results and Near's revenue.

22

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

45.    The allegations contained in paragraphs 1 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

46.    From at least in or about 2021 through at least in or about December 2023, in the Southern District of New York and elsewhere, ANIL MATHEWS, RAHUL AGARWAL, and KENNETH HARLAN, the defendants, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.l0b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in the light of the circumstances under which they were made, not misleading, and aiding and abetting the same, to wit, MATHEWS, AGARWAL, and HARLAN engaged in a scheme to defraud purchasers and holders of Near and KludeIn securities by fraudulently inflating Near's publicly reported revenue.

(Title 15, United States Code, Sections 78j (b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.l0b-5;
and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

47.     The allegations contained in paragraphs 1 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

48.     From at least in or about May 2022 through at least in or about 2024, in the Southern District of New York and elsewhere, ANIL MATHEWS, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MATHEWS engaged in a scheme to embezzle funds from Near in order to pay for his luxury housing in Laguna Beach, California, including by transferring funds through New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Aggravated Identity Theft)

The Grand Jury further charges:

49.     The allegations contained in paragraphs 1 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

50.     From at least in or about May 2022 through at least in or about 2024, in the Southern District of New York and elsewhere, ANIL MATHEWS, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c),

24

to wit, MATHEWS used and transferred the names and personal address of other persons during and in relation to the wire fraud scheme charged in Count Three of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

### COUNT FIVE
### (Wire Fraud)

The Grand Jury further charges:

51.    The allegations contained in paragraphs 1 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

52.    From at least in or about March 2021 through at least in or about 2022, in the Southern District of New York and elsewhere, RAHUL AGARWAL, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, AGARWAL engaged in a scheme to embezzle funds from Near to a company he owned and a company owned by Near Executive-3, including by transmitting false and fraudulent invoices by emails directed to New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

### FORFEITURE ALLEGATIONS

53.    As a result of committing the offenses charged in Counts One, Two, and Three of this Indictment as to ANIL MATHEWS, the defendant, and as a result of committing the offenses charged in Counts One, Two, and Five of this Indictment as to RAHUL AGARWAL, the defendant, and as a result of committing the offenses charged in Counts One and Two of this Indictment as to KENNETH HARLAN, the defendant, the defendants shall forfeit to the United

States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendants personally obtained.

## Substitute Assets

54.     If any of the above-described forfeitable property, as a result of any act or omission by the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

FOREPERSON

JAY CLAYTON
United States Attorney

26